**BUILDING AND CONSTRUCTION TRADES DEPARTMENT, AFL–CIO, et al., Plaintiffs,**

v.

**Robert B. REICH, United States Secretary of Labor,[1] Defendant.**

**Civ. A. No. 91–2731.**

United States District Court, District of Columbia.

Feb. 23, 1993.

Terry R. Yellig, Martin J. Crane, Sherman, Dunn, Cohen, Leifer & Yellig, Gary L. Lieber, Scott Robins, Schmeltzer, Aptaker & Shepard, P.C., Judith E. Rivlin, Sheet Metal Workers' Intern. Ass'n, Washington, DC,

Stephen J. Burton, Felhaber, Larson, Fenlon & Vogt, St. Paul, MN, for plaintiffs.

Sandra M. Schraibman, Raymond M. Larizza, Dept. of Justice, Civ. Div., Washington, DC, for defendant.

Maurice Baskin, Venable, Baetjer, Howard & Civiletti, Washington, DC, for Associated Builders & Contractors, Inc.

## MEMORANDUM OPINION

REVERCOMB, District Judge.

Plaintiffs appeal from an adverse decision of the Department of Labor's Wage Appeals Board. Before the Court are cross-motions for summary judgment as well as two miscellaneous motions, a motion by plaintiffs to strike a memorandum filed by the National Right to Work Committee, and a motion to intervene filed by Associated Builders & Contractors, Inc. The motions have been fully briefed, and oral argument was heard on November 25, 1992. For the reasons stated herein, the motion to intervene shall be denied, the motion to strike shall be granted, and summary judgment shall be entered in favor of the defendant.[2]

### I. Background

The Building and Construction Trades Department, AFL–CIO, certain local labor organizations, and certain contractor associations (collectively, the "plaintiffs") challenge an affirmance by the Department of Labor's Wage Appeals Board of "a determination by the Administrator of the Wage and Hour Division that job targeting programs, generally, and [International Brotherhood of Electrical Workers] Local 595's job targeting program, specifically, violate the Secretary's regulations at 29 C.F.R. Part 3." Building and Construction Trades Unions Job Targeting Programs, Wage App.Bd. Case No. 90–02 (June 13, 1991) [hereinafter "WAB Decision"].

### A. Facts

The material facts are not in dispute.[3] Job targeting programs ("JTPs"), alternatively called market recovery programs, are union initiated schemes designed to maintain and improve the unions' share of certain construction markets by subsidizing contractors who bid on targeted projects. *See* Statement of Material Facts as to Which Pls. Contend There Is No Genuine Issue at ¶¶ 3–4, 8, 13–14 [hereinafter Pls.' Statement]; Def.'s Statement of Material Facts As to Which There Is No Genuine Issue at ¶ 3 [hereinafter Def.'s Statement]. These programs reduce labor costs for government contractors operating under terms of a collective bargaining agreement by providing a "wage subsidy" either to the contractor or directly to employees. Pls.' Statement at ¶¶ 17, 19–20, 26, 27–28; Def.'s Statement at ¶¶ 3–4. "These subsidies are financed by payroll deductions authorized by the membership of the union and paid into a fund managed by the union." Def.'s Statement at ¶ 3; *see also* Pls.' Statement at ¶¶ 5–6, 9. The unions unilaterally decide what jobs to "target" and then determine what wage concessions will be made. Pls.' Statement at ¶¶ 16–18, 24–27; Def.'s Statement at ¶ 3.

### B. Statutes and Regulation

Upon review of the Wage Appeals Board, these JTPs were held to violate "the Davis–Bacon prevailing wage rate requirements

---

2. At oral argument, the Court explained that it would grant the motion to strike, and it would adopt the Report and Recommendation of Magistrate Judge Alan Kay, which concluded that Associated Builders & Contractors' Inc. ("ABC"), has no standing to intervene. *See* Report & Recommendation of Aug. 6, 1992, at 10. Nonetheless, ABC was permitted to file a brief as *amicus curiae*, which it did on December 2, 1992. The Order accompanying this Memorandum Opinion serves to memorialize the Court's pronouncements at oral argument as to these two motions.

3. Defendant has challenged plaintiffs' citation to two affidavits in their statement of material facts as to which no genuine issue exists. *See* Def.'s Statement of Genuine Issues at 2–3. The affidavits referred to by the defendant, and cited by plaintiffs, were filed together with plaintiffs' motion for summary judgment, but do not appear in the administrative record. The defendant has not moved to strike these affidavits, however, and the Court finds that they do not present a different picture of the material facts than emerges from the administrative record itself. Accordingly, the Court takes no action pursuant to defendant's protest of these affidavits.

and the regulations contained at 29 C.F.R. 3.5." WAB Decision at 9.[4] The relevant language of the Davis–Bacon Act of March 3, 1931, ch. 411, § 1, 46 Stat. 1494, as amended, 40 U.S.C. § 276a(a), is as follows (emphasis added):

> The advertised specifications for every contract in excess of $2,000 to which the United States or the District of Columbia is a party, for construction, alteration, and/or repair ... of public buildings or public works ... shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics which shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing ...; and every contract based upon these specifications shall contain a stipulation that the contractor or his subcontractor shall pay all mechanics and laborers employed directly upon the cite of the work, unconditionally and not less than once a week, *and without subsequent deduction or rebate on any account....*

The purpose of this statute is the subject of much literature, but was neatly summarized by the Supreme Court in 1981:

> The Act was "designed to protect local wage standards by preventing contractors from basing their bids on wages lower than those prevailing in the area." House Committee on Education and Labor, Legislative History of the Davis–Bacon Act, 87th Cong., 2d Sess. 1 (Comm. Print 1962) (Legislative History). Passage of the Act was spurred by the economic conditions of the early 1930's, which gave rise to an oversupply of labor and increased the importance of federal building programs, since private construction was limited.... In the words of Representative Bacon, the Act was intended to combat the practice of "certain itinerant, irresponsible contractors, with itinerant, cheap, bootleg labor, [who] have been going around throughout

the country 'picking' off a contract here and a contract there." The purpose of the bill was "simply to give local labor and the local contractor a fair opportunity to participate in this building program." 74 Cong.Rec. 6510 (1931).

*Universities Research Ass'n, Inc. v. Coutu,* 450 U.S. 754, 773–74, 101 S.Ct. 1451, 1463, 67 L.Ed.2d 662 (1981).

Two additional enactments by Congress have authorized the Secretary of Labor to promulgate "reasonable regulations for contractors and subcontractors engaged in the construction, prosecution, completion or repair of public buildings [or] public works...." Copeland Anti–Kickback Act of June 13, 1934, ch. 482, § 2, 48 Stat. 948, as amended, 40 U.S.C. § 276c; *see also* Reorganization Plan No. 14 of 1950, 5 U.S.C.App. at 242 (empowering Secretary of Labor to issue regulations to "assure coordination of administration and consistency of enforcement of the labor standards provisions" of numerous laws, including the Davis–Bacon Act and the Copeland Act).

Pursuant to this authority, the Secretary of Labor has issued regulations designed to ensure compliance with the Davis–Bacon Act. The regulation found by the Wage Appeals Board to have been violated by JTPs prohibits payroll deductions "made without application to and approval of the Secretary of Labor" except for, *inter alia,* "Any deductions to pay regular union initiation fees and membership dues, not including fines or special assessments: *Provided, however,* That a collective bargaining agreement between the contractor or subcontractor and representatives of its employees provides for such deductions and the deductions are not otherwise prohibited by law." 29 C.F.R. § 3.5(i).

## C. Wage Appeals Board Decision

In reaching their decision, each of the three members of the Wage Appeals Board

---

4. The Wage Appeals Board also let stand the Administrator's finding that JTPs did not constitute a criminal violation under the Copeland Anti–Kickback Act of June 13, 1934, ch. 482, § 1, 48 Stat. 948, as amended, 18 U.S.C. § 874. That Act makes it a crime to force, intimidate, threaten, "or by any other manner whatsoever" to cause a laborer working on a government construction project "to give up any part of the compensation to which he is entitled under his contract of employment." Although the administrator's decision was contested by ABC, the Wage Appeals Board regarded the administrator's decision as an exercise of prosecutorial discretion. WAB Decision at 5 & n. 1.

panel wrote separately. Member O'Brien, writing for the majority, concluded that JTPs violate the regulation set forth at 29 C.F.R. § 3.5(i) because the wages withheld under the programs are not " 'union dues' as that term is ordinarily understood." WAB Decision at 8. Additionally, relying upon the holding in *Communications Workers v. Beck,* 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988), Member O'Brien argued that withholding wages under a JTP is "otherwise prohibited by law" under Section 3.5(i) because the funds collected are "[un]necessary to 'performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues.' " *Beck,* 487 U.S. at 762–63, 108 S.Ct. at 2657 (quoting *Ellis v. Brotherhood of Ry. Clerks,* 466 U.S. 435, 448, 104 S.Ct. 1883, 1892, 80 L.Ed.2d 428 (1984)).[5]

Member Peters joined Member O'Brien's conclusion that JTPs violate 29 C.F.R. § 3.5(i) because the wages withheld are not "union dues," but she declined to endorse the discussion of *Beck,* stating that it was unnecessary to rule on the application of that case to the present one. WAB Decision at 10 (Ruth E. Peters, concurring). Finally, Member Rothman argued that the Wage Appeals Board had reached the right decision, but "for the wrong articulated reasons." WAB Decision at 11 (Stuart Rothman, concurring in part and dissenting in part). Like Member Peters, he saw no need to apply *Beck* to the present case, but he also concluded that JTPs do not violate 29 C.F.R. § 3.5(i) because they involve, in his opinion, neither dues nor assessments. Rather, they call for payments "not provided for in Section 3.5(i)." WAB Decision at 12. Nonetheless, Member Rothman found that JTPs violate the Davis–Bacon Act directly, because they may create different wage standards within the same locality, which he concluded was an abrogation of the clear purpose of the Act. *Id.* at 14.

This case is an appeal from the decision of the Wage Appeals Board. As such, this Court considers the Board's decision in light of any charges of legal error or factual insufficiency. Because no material fact is in dispute, the only issue to be resolved involves the single conclusion of the Board receiving the vote of a majority of its members— namely, that the wages withheld under JTPs are not "membership dues" and that those programs, therefore, violate 29 C.F.R. § 3.5(i). This conclusion is considered to be the Secretary's interpretation of the Labor Department's own regulation. *See* 29 C.F.R. § 7.1(d) (Wage Appeals Board acts as the "authorized representative of the Secretary of Labor" and acts with full and final authority in matters over which it has jurisdiction).

## II. Discussion

### A. Standard of Review

■ Resolution of this case on cross-motions for summary judgment must proceed along a two-step analysis. First, the Court must determine whether the Labor Department's interpretation of its own regulation is reasonable. An agency's interpretation of its own regulations is due considerable respect. *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980). Generally, an agency's interpretation is controlling unless it is plainly erroneous or inconsistent with the regulation. *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–02, 13 L.Ed.2d 616 (1965); *see Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945).

■ Second, if the agency's interpretation of its regulation is acceptable, the Court must determine whether the regulation is "consistent with the statute under which [it] is promulgated." *United States v. Larionoff,* 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977). Review of an agency's construction of a statute that it administers

---

**5.** *Beck* involved the interpretation of Section 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3), which generally allows employees working under the benefit of a collective bargaining agreement to be required to pay "periodic dues" to the union acting as the employees' representative, regardless of whether a par-

ticular employee is a member of the union. The scope of "periodic dues," according to the Supreme Court in *Beck,* is limited to the "financial core" of union activities, which does not extend beyond "collective bargaining, contract administration, and grievance adjustment." 487 U.S. at 745, 108 S.Ct. at 2648.

also involves a two-step analysis. "First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984).

If, on the other hand, Congress has not spoken as to a particular issue, "this Court must assume that Congress implicitly delegated to the agency the power to make policy choices" regarding the conflicting interests left by the statute's ambiguities. *Ohio v. United States Dep't of Interior*, 880 F.2d 432, 441 (D.C.Cir.1989); *see Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782. "In that event, the court must defer to the agency's interpretation of the statute so long as it is reasonable and consistent with the statutory purpose." *Ohio v. United States Dep't of Interior*, 880 F.2d at 441.

**B. Interpretation of the Regulation**

 The Wage Appeals Board's conclusion that wages withheld pursuant to JTPs are not membership dues cannot be said to be plainly erroneous or inconsistent with the regulation. In light of the Supreme Court's recognition in *Beck* that the union membership requirement of those who labor under the benefit of a collective bargaining agreement has been " 'whittled down to its financial core,' " 487 U.S. at 745, 108 S.Ct. at 2648 (quoting *NLRB v. General Motors Corp.*, 373 U.S. 734, 742, 83 S.Ct. 1453, 1459, 10 L.Ed.2d 670 (1963)), it is not plainly erroneous for the Secretary of Labor to conclude that the term "membership dues" in Section 3.5(i) does not

extend to job creation schemes that may not inure to the benefit of contributing employees.[6]

Further, defendant's interpretation of Section 3.5(i) is consistent with the regulation as a whole. *See Campesinos Unidos, Inc. v. United States Dep't of Labor*, 803 F.2d 1063, 1069 (9th Cir.1986) (noting that the court's "task is to interpret the regulation as a whole, in light of the overall statutory and regulatory scheme, and not to give force to one phrase in isolation"); *McCuin v. Secretary of Health and Human Servs.*, 817 F.2d 161, 168 (1st Cir.1987) ("In interpreting statutes and regulations, courts must try to give them a harmonious, comprehensive meaning, giving effect, when possible, to all provisions."). Section 3.5(i) allows for certain deductions to be made from employee wages "without application to and approval of the Secretary of Labor." 29 C.F.R. § 3.5. Section 3.6, which deals with payroll deductions that are permissible with the Secretary's approval, restricts the Secretary's approval to situations in which "[t]he contractor, subcontractor, or any affiliated person does not make a profit or benefit directly or indirectly from the deduction either in the form of a commission, dividend, or otherwise." 29 C.F.R. § 3.6(a).

Defendant argues persuasively that the Secretary would not be able to specially approve payroll deductions for JTPs under Section 3.6(a) because those programs may benefit the very contractor making the deductions. Therefore, it is altogether consistent to disallow contractors from making payroll deductions automatically under Section 3.5 when the Secretary himself would be prohibited from approving them under Section 3.6.

As the Court finds the Wage Appeals Board's interpretation of Section 3.5(i) to be

---

**6.** The Court takes notice that this reference to *Beck* is made notwithstanding the fact that *Beck* involved the interpretation of a wholly different statutory provision, Section 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3). Plaintiffs have urged this Court to consider interpretations given terms such as "membership dues" or "periodic dues" by other agencies interpreting other statutes and regulations. *See* Mem. of P. & A. in Supp. of Pls.' Mot. for Summ.J. at 28–34. As defendant correctly points out, however, *Beck* calls into question the broad interpre-

tation of Section 8(a)(3) given that statutory section by the Regional Director of the National Labor Relations Board ("NLRB") in two rulings issued in 1987. *See* Mem. of P. & A. in Supp. of Def.'s Cross–Mot. for Summ.J. & in Opp'n to Pls.' Mot. for Summ.J. at 33 n. 45. Hence, NLRB interpretations of Section 8(a)(3) issued prior to the decision in *Beck* are of little use in an explication of what Section 3.5(i) means. Conversely, as utilized here, *Beck* is very instructive in setting boundaries that constrain what Section 3.5(i) might reasonably be interpreted to mean.

490

neither plainly erroneous nor inconsistent with the regulation, it must next consider whether the regulation itself is consistent with the statute under which it was promulgated.

## C. Chevron Analysis, Step One

Neither the language of the Davis–Bacon Act nor "other traditional tools of statutory interpretation" reveal a "clear congressional desire" to disallow the type of regulation at issue here. *See Pension Benefit Guar. Corp. v. LTV Corp.,* 496 U.S. 633, 648–49, 110 S.Ct. 2668, 2677, 110 L.Ed.2d 579 (1990). The statute is written in broad terms to require payment of prevailing wages without "subsequent deduction or rebate on any account ... regardless of any contractual relationship" between employer and employee. 40 U.S.C. § 276a. This language seems to support the Secretary's regulation rather than indict it.

Nonetheless, the statute does not speak directly to the facts of this case. Congress passed the statute in 1931 and strengthened it in 1935 after finding that "unscrupulous contractors ha[d] taken advantage of the wide-spread unemployment among the buildings crafts to exploit labor and to deprive employees of the wages to which they were entitled under the law." S.Rep. No. 1155, 74th Cong., 1st Sess. 1–2 (1935); *accord* H.R.Rep. No. 1756, 74th Cong., 1st Sess. 1 (1935). JTPs are initiated and managed by unions, not contractors. Moreover, the amounts deducted from employee wages are approved by vote of the union membership so exploitation, if any, may be said to be inflicted by the employees upon themselves.

■ On the other hand, these programs produce numerous results that seem at odds with the Act. Broadly speaking, JTPs cull wages from union employees to subsidize other employees (and contractors) working on targeted projects. The Act, by its terms, directs federal contractors to pay "prevailing" wages, but employees working on federal projects and contributing to a JTP may receive, in effect, less than prevailing wages. Further, subsidization of targeted projects may skew prevailing wages in that area. For example, contractors of targeted projects will have different labor costs that contrac-

tors on nontargeted projects. Finally, the inescapable fact that JTPs fundamentally are programs designed to collect wages from employees in order to pay contractors in exchange for continued or increased employment flies in the face of the very purpose of the Act—to prevent contractors with cheap labor from unfairly winning contracts by underbidding their competition. *See Universities Research Ass'n, Inc. v. Coutu,* 450 U.S. at 773–74, 101 S.Ct. at 1462–63 (quoting Rep. Bacon).

Although the Act does not appear by its terms or clear intent to forbid JTPs, it also does not exclude them from its coverage. This conclusion is unsurprising given the Act's sweeping language and its implementation scheme, which calls upon the Secretary of Labor to issue regulations that will ensure compliance. Therefore, the Court must turn to step two of *Chevron* to consider whether "the agency's interpretation of the statute ... is reasonable and consistent with the statutory purpose." *Ohio v. United States Dep't of Interior,* 880 F.2d at 441.

## D. Chevron Analysis, Step Two

■ The Secretary's interpretation is plainly reasonable and consistent with the Act. "The brief hearings and debates on [the original 1931] act leave no doubt as to the evil at which the statute was directed. It was designed to protect local wage standards by preventing contractors from basing their bids on wages lower than those prevailing in the area." House Comm. on Educ. and Labor, 87th Cong., 2d Sess., *Legislative History of the Davis–Bacon Act* 1 (Comm. Print 1962) [hereinafter *Legislative History*].

Not long after enactment, though, Congress found that the "statute was inadequate to cope with many of the practices to which contractors have resorted, a finding with which the departments of the Government entrusted with the administration of the existing act, fully concurred." S.Rep. No. 1155 at 2; *accord* H.R.Rep. No. 1756 at 2.

The need for strengthening the provisions of the act was developed in great detail by hearings before the subcommittee of the Senate Committee on Commerce to inves-

tigate racketeering in 1933 and a subcommittee of the Senate Committee on Education and Labor in 1934. These hearings developed the widespread abuses in the payment practices of Government contractors and the inadequacy of existing law to remedy them. These revelations resulted not only in the Davis–Bacon amendments of 1935 but also in the Copeland (Anti-Kickback) and False Statement Acts of 1934.

*Legislative History* at 3.

One provision of the Copeland Act vested in the Secretary of Labor the authority to "make reasonable regulations for contractors and subcontractors" in order to enforce the mandate of the Davis–Bacon Act.[7] The Secretary of Labor was given additional regulatory authority under Reorganization Plan No. 14 of 1950, 5 U.S.C.App. at 242, to "assure coordination of administration and consistency of enforcement of the labor standard provisions" of numerous acts, including the Davis–Bacon Act and the Copeland Act.

■ Pursuant to the Secretary's authority under the Copeland Act and the Reorganization Plan, the Labor Department promulgated the regulation at issue in 1964. *See* 29 Fed.Reg. 97 (1964). Rather than define the totality of circumstances in which a contractor may withhold employee wages without violating the Davis–Bacon Act, the Labor regulations set forth a very narrow category of deductions that may be made without the prior permission of the Secretary, and require all other deductions to be specially approved. 29 C.F.R. §§ 3.5–3.6. This regulatory structure is consistent with Congress's expressed desire that the "burden of seeing to it that the illegal practices of exacting rebates or kick-backs is eliminated is placed upon contractors...." S.Rep. No. 1155 at 3; *accord* H.R.Rep. No. 1756 at 3.

### E. Relationship to the Copeland Act

■ Because of the related goals and histories of the Davis–Bacon Act and the Copeland Act, plaintiffs insist that the reach of the Davis–Bacon Act was intended to be no broader than that of the Copeland Act—that they were meant to provide complimentary civil and criminal remedies for identical proscribed behavior. Pls.' Mem. at 20; *see supra* note 4. Relying upon *United States v. Carbone*, 327 U.S. 633, 66 S.Ct. 734, 90 L.Ed. 904 (1946), plaintiffs argue that the administrator, who found no criminal violation under the Copeland Act, should have found no civil violation under the Davis–Bacon Act.

*Carbone* involved the criminal prosecution of union leaders who had coerced the payment of union initiation fees from laborers employed in a closed shop. In holding that the union officials committed no crime cognizable under the Copeland Act, the Supreme Court concluded that "nothing in the legislative history [of the Copeland Act] support[s] the thesis that the statute was intended to affect legitimate union activities." 327 U.S. at 639, 66 S.Ct. at 737. The Court went on to explain "that this Act was designed solely to prevent workers from wrongfully being deprived of their full wages and that evils relating to the internal management of unions were matters with which Congress did not concern itself in enacting the Kickback Act." *Id.* at 640, 66 S.Ct. at 737.

■ Plaintiffs' argument is unavailing. Intuitively, there is no reason why the Davis–Bacon Act, a civil statute designed to be implemented through agency regulations, should have no greater flexibility than its criminal counterpart. *Cf. Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639*, 913 F.2d 948, 955–56 (D.C.Cir. 1990) (noting that "'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity'") (quoting *Busic v. United States*, 446 U.S. 398, 406, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381 (1980)), *cert. denied*, —— U.S. ——, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991). Further, this Court is aware of no case which holds that the Davis–Bacon Act and the Copeland Act should be construed *in pari materia.* Nor does the legislative history of either statute support such a conclusion. Undoubtedly, Congress

---

**7.** This regulatory authority initially was vested jointly in the Departments of the Treasury and the Interior, but was shifted to the Department of Labor in 1949. Act of May 24, 1949, ch. 139, § 134, 63 Stat. 108.

intended both Acts to promote a single, though wide-ranging, goal—to protect local prevailing wage standards—but this does not lead to the conclusion that the Acts are identical in reach.

■ For example, the Copeland Act was "aimed at the suppression of the so-called 'kick-back racket' by which a contractor on a Government project pays his laborers wages at the rate the Government requires him to pay them, but thereafter *forces* them to give back to him part of the wages they have received." H.R.Rep. No. 1750, 73d Cong., 2d Sess. (1934) (emphasis added). The Senate Committee on Education and Labor found "the so-called 'kick-back' practice" to be "the most serious form of abuse[ ] indicated by complaints coming to [its] attention...." S.Rep. No. 332, 74th Cong., 1st Sess. (1935). Conversely, from its inception, the Davis–Bacon Act was intended generally to "prevent[ ] contractors from basing their bids on wages lower than those prevailing in the area." *Legislative History* at 1. Thus, although written in broad terms, the Copeland Act focuses upon *coerced forfeiture* of employee wages whereas the Davis–Bacon Act also may proscribe, as in this case, a *voluntary agreement* between a union and contractor to reduce wages below prevailing rates.

### Conclusion

For the reasons set forth in this Memorandum Opinion, the Court finds that the defendant's interpretation of the Labor Regulation codified at 29 C.F.R. § 3.5(i) is reasonable and that that regulation is consistent with the purposes of the Davis–Bacon Act. Accordingly, plaintiffs' motion for summary judgement shall be denied and defendant's cross-motion for summary judgment shall be granted. An appropriate Order accompanies this Memorandum Opinion.

### ORDER

For the reasons set forth in the accompanying Memorandum Opinion, it is

ORDERED that the Motion to Intervene, filed by Associated Builders & Contractors, Inc., is DENIED; and it is

FURTHER ORDERED that the Motion to Strike Memorandum Filed by the National Right to Work Committee is GRANTED; and it is

FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment is DENIED; and it is

FURTHER ORDERED that Defendant's Cross–Motion for Summary Judgment is GRANTED; and it is

FURTHER ORDERED that case is DISMISSED.