BUILDING AND CONSTRUCTION TRADES DEPARTMENT, AFL-CIO, et al., Plaintiffs,

v.

Robert B. REICH, United States Secretary of Labor, Defendant.

Civ. A. No. 91–2731.

United States District Court, District of Columbia.

April 22, 1993.

Terry R. Yellig, Martin J. Crane, Sherman, Dunn, Cohen, Leifer & Yellig; Gary L. Lieber, Scott Robins, Schmeltzer, Aptaker & Shepard, P.C.; Judith E. Rivlin, Sheet Metal Workers' Intern. Ass'n, Washington, DC; and Stephen J. Burton, Felhaber, Larson, Fenlon & Vogt, St. Paul, MN, for plaintiffs.

Sandra M. Schraibman and Raymond M. Larizza, Dept. of Justice, Civ. Div., Washington, DC, for defendant.

Maurice Baskin, Venable, Baetjer, Howard & Civiletti, Washington, DC, for Associated Builders & Contractors, Inc.

## ORDER

REVERCOMB, District Judge.

On February 23, 1993, the Court granted summary judgment in favor of the defendant, upholding the decision of the Department of Labor's Wage Appeals Board "that job targeting programs, generally, and [International Brotherhood of Electrical Workers] Local 595's job targeting program, specifically, violate the Secretary's regulations at 29 C.F.R. Part 3." Building and Construction Trades Unions Job Targeting Programs, Wage App. Bd. Case No. 90–02 (June 13, 1991); *see* 815 F.Supp. 484.

Now plaintiffs have filed a motion for reconsideration pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, arguing that the Court made a mistake of fact and a mistake of law in its ruling, either of which justify reconsideration. This motion has been fully brief and is submitted on the papers. The Court will address each of the two alleged errors in turn.

### A. Mistake of Fact

Plaintiffs argue in their motion that "the Court made a mistake of fact ... when it found that job targeting programs always, or

necessarily, subsidize contractors that bid on federally funded or assisted construction contracts covered by the Davis–Bacon and Related Acts." Pls.' Mot. for Recons. at 2. The Court agrees that the facts, as presented by the parties, do not show that monies raised through job targeting programs are necessarily, or perhaps ever, used to subsidize contractors bidding on *government* projects. This factual error, however, has no bearing whatsoever on any reason articulated by the Court in its February 23 Opinion in support of the decision reached there. Therefore, the Court will not grant reconsideration of its decision on this basis.

However, the Court will modify its February 23 Opinion to excise the factual error as follows:

The second sentence of section I.A., 815 F.Supp. at 486, currently reads:

> Job targeting programs ('JTPs'), alternatively called market recovery programs, are union initiated schemes designed to maintain and improve the unions' share of certain construction markets by subsidizing contractors who bid on government projects.

This sentence shall be amended to read:

> Job targeting programs ('JTPs'), alternatively called market recovery programs, are union initiated schemes designed to maintain and improve the unions' share of certain construction markets by subsidizing contractors who bid on targeted projects.

Thus, "targeted" is substituted for "government."

The second sentence of the third paragraph of section II.C, 815 F.Supp. at 490, presently reads:

> Broadly speaking, JTPs cull wages from union employees to subsidize other em-

ployees (and contractors) working on certain federal projects.

This sentence shall be amended to read:

> Broadly speaking, JTPs cull wages from union employees to subsidize other employees (and contractors) working on targeted projects.

"[C]ertain federal" is deleted and "targeted" inserted in its place.

Finally, the sixth sentence of the same paragraph, 815 F.Supp. at 490, reads:

> Finally, the inescapable fact that JTPs fundamentally are programs designed to collect wages from employees in order to pay contractors in exchange for continued or increased employment flies in the face of the very purpose of the Act—to prevent contractors with cheap labor from unfairly winning government contracts by underbidding their competition.

This sentence shall be amended to read:

> Finally, the inescapable fact that JTPs fundamentally are programs designed to collect wages from employees in order to pay contractors in exchange for continued or increased employment flies in the face of the very purpose of the Act—to prevent contractors with cheap labor from unfairly winning contracts by underbidding their competition.

The word "government" is simply deleted.

## B.  Mistake of Law

As a second basis for reconsideration, plaintiffs argue that the Court misconstrued the Supreme Court's holding in *Communication Workers v. Beck*, 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988), and utilized its mistaken interpretation in upholding the decision of the Wage Appeals Board. *See* Mem. of P. & A. in Supp. of Pls.' Mot. for Recons. at 6–8. In fact, it is plaintiffs who are mistaken; the Court neither construes nor relies upon the holding in *Beck* in its February 23 Opinion.[1]

---

1. *Beck* addressed the question whether Section 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3), "permits a union, over the objections of dues-paying nonmember employees, to expend funds [collected under its provisions] on activities unrelated to collective bargaining, contract administration, or grievance adjustment...." *Beck*, 487 U.S. at 738, 108

S.Ct. at 2645. Ultimately, the Supreme Court concluded that Section 8(a)(3) "authorizes the exaction of only those fees and dues necessary to 'performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues.'" *Id.* at 762–63, 108 S.Ct. at 2657 (quoting *Ellis v. Broth-*

In the February 23 Opinion, the Court states:

> In light of the Supreme Court's recognition in *Beck* that the union membership requirement of those who labor under the benefit of a collective bargaining agreement has been " 'whittled down to its financial core,' " 487 U.S. at 745 [108 S.Ct. at 2648] (quoting *NLRB v. General Motors Corp.*, 373 U.S. 734, 742 [83 S.Ct. 1453, 1459, 10 L.Ed.2d 670] (1963)), it is not plainly erroneous for the Secretary of Labor to conclude that the term "membership dues" in Section 3.5(i) does not extend to job creation schemes that may not inure to the benefit of contributing employees.

815 F.Supp. at 489. In making this statement, the Court did not cite the holding in *Beck*, but rather the Supreme Court's observation that

> Taken as a whole, § 8(a)(3) [of the National Labor Relations Act, 29 U.S.C. § 158(a)(3),] permits an employer and a union to enter into an agreement requiring all employees to become union members as a condition of continued employment, *but the "membership" that may be so required has been "whittled down to its financial core."*

487 U.S. at 745, 108 S.Ct. at 2648 (quoting *NLRB v. General Motors Corp.*, 373 U.S. at 742, 83 S.Ct. at 1459) (footnote omitted).

Somehow, from the passage in the February 23 Opinion just quoted, plaintiffs conclude that the Court misunderstood the holding in *Beck*. Rather, it is plaintiffs who misunderstand the Court's citation to *Beck*. The question addressed by the Court in the February 23 Opinion was not whether bona fide union members could be obligated to contribute more to their unions than amounts strictly necessary for "collective bargaining, contract administration, and grievance adjustment." *Beck*, 487 U.S. at 745, 108 S.Ct. at 2648; *see* 815 F.Supp. at 488 n. 5. Instead, the issue before the Court was "whether the Labor Department's interpretation of its own regulation is reasonable." 815 F.Supp. at 488.[2]

■ Because of the inconsistent evolution of the meaning of Section 8(a)(3) culminating in the *Beck* decision, *see* 815 F.Supp. at 489 n. 6, this Court observed that prior interpretations of that section "are of little use in an explication of what [29 C.F.R. §] 3.5(i) means. *Id.* at 489 n. 6. This statement implicitly recognizes that the Secretary of Labor is not bound to interpret Labor Department regulations *in pari materia* with the National Labor Relations Board's interpretation of its own similar statutory provisions in the National Labor Relations Act.[3] In fact, the Secretary has a great deal of discretion as to how Labor regulations are to be interpreted, *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22, and the Court is constrained to test only whether his interpretation is plainly erroneous or inconsistent with the regulation. *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *see Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); 815 F.Supp. at 488.

■ The Court found the Secretary's narrow interpretation of the term "membership dues" in Section 3.5(i) to be reasonable, 815 F.Supp. at 489, and was aided in reaching that conclusion by the Supreme Court's still narrower interpretation of the term "periodic dues" in Section 8(a)(3) in the context of the *Beck* case. Hence the Court's observation that *"Beck* is very instructive in *setting*

---

erhood of Ry. Clerks, 466 U.S. 435, 448, 104 S.Ct. 1883, 1892, 80 L.Ed.2d 428 (1984)).

**2.** It should be noted that plaintiffs' allegation of legal error applies only to the Court's determination as to whether the Wage Appeals Board reasonably interpreted 29 C.F.R. § 3.5(i). Once the Court determined the interpretation to be reasonable, it went on to a two-part *Chevron* analysis of the regulation, *see Chevron U.S.A. Inc. v. Natural Resources Defense Counsel, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984), and determined that the regulation, as interpreted, was consistent with the statute under which it was promulgated. 815 F.Supp. at 489–90.

**3.** Similarly, the Secretary of Labor is not bound to "adopt the Department of Justice's interpretation of the term 'membership dues' in Section 302(c)(4) of the Labor–Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(4)." Mem. of P. & A. in Supp. of Pls.' Mot. for Summ.J. at 34.

*boundaries* that constrain what Section 3.5(i) *might reasonably be interpreted to mean.* 815 F.Supp. at 489 n. 6 (emphasis added). In other words, the reasonableness of the Secretary's interpretation of Section 3.5(i) is independent from, although inferentially supported by, the above-quoted passage from *Beck.*

As the Court finds no mistake of law in its February 23 opinion, and as the mistake of fact is immaterial to the decision in this case, plaintiffs' motion for reconsideration is DENIED. The Memorandum Opinion issued February 23, 1993 shall be amended in accordance with the directions of this Order to excise the factual mistake contained therein.

SO ORDERED.