68 F.3d 1194
 64 USLW 2279, 131 Lab.Cas. P 33,307,
2 Wage & Hour Cas.2d (BNA) 1633,
95 Cal. Daily Op. Serv. 8206,
95 Daily Journal D.A.R. 14,133
 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 357,
AFL-CIO, Plaintiff-counter-defendant-Appellee,
v.
Ronnie J. BROCK; Charles Brush, Jr.; Dennis Chapman;
Kenneth N. Harvey; James E. Herndon; Michael F. Jordan;
Gilbert Medina; Joseph N. Merritt; Wendell K. Reynolds;
Jerry B. Spencer; Robert W. Thomas,
Defendants-counter-claimants-Appellants.
 No. 94-16131.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 12, 1995.
Decided Oct. 20, 1995.
 
 Steven G. Biddle, O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, Phoenix, Arizona, argued (Peter C. Prynkiewicz, O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, Phoenix, Arizona, on brief), for defendants-counter-claimants-appellants.
 Patricia S. Waldeck, Las Vegas, Nevada, for plaintiff-counter-defendant-appellee.
 Terry R. Yellig, Sherman, Dunn, Cohen, Leifer & Yellig, Washington, D.C., for amicus.
 Appeal from the United States District Court for the District of Nevada.
 Before: CHOY, BEEZER, and THOMPSON, Circuit Judges.
 CHOY, Circuit Judge:
 
 
 1
 In this appeal, appellants ("Workers"), who are members of the International Brotherhood of Electrical Workers ("IBEW"), challenge appellee IBEW Local 357's ("Local 357") requirement that they pay a two percent gross wage assessment to support Local 357's Jobs Targeting Program ("JTP"). The Workers contend that this assessment violates the Davis-Bacon Act, 40 U.S.C. Sec. 276a(a). We agree and reverse the district court's grant of summary judgment in favor of Local 357.
 
 I.
 
 2
 The Workers are not members of Local 357, but are members of other IBEW locals (their "home locals"). The Workers were employed within Local 357's jurisdiction as "travelers" on a project covered by the Davis-Bacon Act. Local 357's Bylaws require members of the local and travelers alike to pay "working dues" to Local 357. Bylaws of Local Union No. 357 ("Bylaws"), Art. XI, Sec. 6(d). In addition to the working dues that each worker pays to Local 357, Local 357 also requires each IBEW member working within its jurisdiction under an "inside" collective bargaining agreement to pay an additional two percent of his or her gross wages directly to Local 357's JTP. Bylaws Art. XI, Sec. 6(a).[1] The Workers were employed under an "inside" agreement.
 
 
 3
 The JTP at issue, called the Electrical Industry Advancement Fund, was established in mid-1986. Local 357's JTP, like JTPs in general, is designed to assist union contractors financially by subsidizing their labor costs on certain targeted projects where it is anticipated that competition from non-union contractors would effectively prevent union contractors from bidding low enough to win the bid if they were required to pay the full collectively bargained rate.
 
 
 4
 Travelers working within Local 357's jurisdiction are not permitted to vote on Local 357 matters. Hence, the Workers have never had an opportunity to accept or reject Local 357's JTP.
 
 
 5
 The Workers learned that the Department of Labor's Wage and Hour Division ruled that the JTP of IBEW Local 595 violated the Davis-Bacon Act. The information was based on a case involving the Building and Construction Trades Department of the AFL-CIO. See Letter of Administrator (Jan. 24, 1989), clarified by Letter of Administrator (Sept. 5, 1989) ("Supplemental Letter Ruling"), aff'd sub nom. In re Building & Constr. Trades Unions Job Targeting Programs, Wage App.Bd. Case No. 90-02 (Wage App.Bd. June 13, 1991) ("WAB Decision"), aff'd sub nom. Building & Constr. Trades Dep't v. Reich, 815 F.Supp. 484 (D.D.C.), modified, 820 F.Supp. 11 (D.D.C.1993), and aff'd, 40 F.3d 1275 (D.C.Cir.1994) (Building Trades ). Believing this ruling to apply to Local 357's JTP, the Workers stopped paying the two percent gross wage assessment to Local 357's JTP.
 
 
 6
 In Building Trades, the Administrator of the Wage and Hour Division of the Department of Labor (the "Administrator") ruled that Local 595's JTP violated the Department's regulations under the Davis-Bacon Act. In Local 595's JTP, contractors governed by the Davis-Bacon Act deducted a percentage of workers' wages, which they forwarded to Local 595 for use in subsidizing bids for targeted contractors. The deductions forwarded to Local 595's JTP were purportedly made for "vacation allowances," but were then allocated to the JTP. In her Supplemental Letter Ruling, the Administrator reaffirmed and clarified her prior ruling. The Administrator further held:
 
 
 7
 With regard to your statement that our ruling does not prohibit payments, which you characterize as union dues, made directly by members to their union to finance a JTP, we disagree if the source of such payments is attributable to wages required to be paid on a Davis-Bacon covered project. Therefore, direct payments used to fund a JTP made by a union member while working on a Davis-Bacon project would be considered a subsequent deduction or rebate prohibited by the Davis-Bacon Act and 29 C.F.R. Sec. 5.5(a)(1) if and to the extent that the payment has the effect of the employee receiving less than the prevailing wage, free and clear.
 
 
 8
 Supplemental Letter Ruling at 2.
 
 
 9
 In early 1992, Local 357's Trial Board charged the Workers with violating the IBEW Constitution and Local 357's Bylaws. The Workers were subsequently found guilty of failing and refusing to pay the two percent gross wage assessment and were fined the unpaid amount plus a twenty percent penalty. The Trial Board also suspended the Workers, and one of the Workers was expelled from the union altogether. The Trial Board's judgment also notified the Workers that if it became necessary for Local 357 to pursue court action to collect the monies adjudged due, the Workers would be held responsible for Local 357's attorney's fees and for interest on the amount due.
 
 
 10
 When the Workers refused to pay the amounts assessed, Local 357 filed a complaint in Nevada state court to collect the amounts it claimed were due, including attorney's fees and costs. The Workers removed the complaint to the United States District Court for the District of Nevada and sought a declaratory judgment that Local 357 was not entitled to collect the assessments and penalties because they were illegal.[2]
 
 
 11
 The district court granted Local 357's cross-motion for summary judgment and denied the Workers' motion for summary judgment, upholding the Trial Board's decision and awarding Local 357 the two percent assessments in arrears, a twenty percent fine, and the attorney's fees and interest requested in the amount of $42,827.19. In so doing, the district court summarily held that Local 357's JTP was lawful and that the Building Trades rulings were inapplicable to the case.
 
 II.
 
 12
 The Workers argue that Local 357's JTP violates the purpose of the Davis-Bacon Act, 40 U.S.C. Sec. 276a(a), the Department of Labor's implementing regulations of the Act, 29 C.F.R. Part 5, and the Department of Labor's interpretation of its regulations in the Building Trades case. The Workers further maintain that even if the JTP does not violate the Davis-Bacon act, the district court erred in permitting Local 357 to collect a twenty percent penalty from each worker, plus interest, costs, and attorney's fees because no provision of either the IBEW Constitution or Local 357's Bylaws in effect at the time permitted these sanctions. Moreover, the Workers maintain that the award of attorney's fees was improper.
 
 
 13
 Local 357 responds with a series of interrelated arguments. It contends that neither the Davis-Bacon Act nor the Copeland Act applies to this case. In particular, Local 357 maintains that the "without subsequent deduction or rebate" language in the Davis-Bacon Act was only intended to create a contractual remedy for the same "kickback" practices prohibited by the Copeland Anti-Kickback Act, 18 U.S.C. Sec. 874. Moreover, Local 357 argues that even if the Davis-Bacon Act prohibited activity broader than kickbacks, the Davis-Bacon Act does not apply to union activity. Local 357 also implicitly contends that, even if the Davis-Bacon Act applied to union activity, the two percent gross wage assessment constitutes "membership dues," which are permissible deductions within the meaning of 29 C.F.R. Sec. 3.5(i). Finally, Local 357 argues that the penalty assessed on the Workers was authorized by the IBEW Constitution and Local 357's Bylaws and that the attorney's fee award was appropriate under the common benefit theory.
 
 
 14
 We review a grant of summary judgment de novo. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). Because there are no genuine issues of material fact in dispute, this court's task in this appeal is to determine whether the district court properly applied the relevant law to the undisputed facts. Building Trades, 40 F.3d at 1279.
 
 
 15
 A. Local 357's Two Percent Gross Wage Assessment Violates the Davis-Bacon Act.
 
 
 16
 1. The Scope of the Davis-Bacon Act is Broader than the Copeland Act's Prohibition on Kickbacks.
 
 
 17
 Local 357 and the amicus curiae, Building and Construction Trades Department, AFL-CIO, first contend that the Davis-Bacon Act's prohibition of "subsequent deduction or rebate" is narrow, merely coextensive with the Copeland Act's anti-kickback provisions. Implicitly, they claim that Local 357's JTP does not involve kickbacks, which are "the coerced return of a portion of a worker's wages to his employer." Building Trades, 40 F.3d at 1279.[3] Accordingly, Local 357 and the amicus curiae contend that the Davis-Bacon Act does not apply to Local 357's JTP.
 
 
 18
 This exact argument was recently rejected by the Court of Appeals for the District of Columbia Circuit in Building Trades. Building Trades, 40 F.3d at 1279-1280. The D.C. Circuit held that "both the language and the goals" of the Davis-Bacon Act are broader than that of the Copeland Act, and that the Department of Labor's interpretation to that effect was "rational and based upon a reasonable interpretation of the statute." Building Trades 40 F.3d at 1280. We agree with the D.C. Circuit's analysis.
 
 
 19
 The language of the two statutes is materially different. Whereas the Copeland Act imposes criminal penalties for requiring an employee to "give up ... compensation" by "force, intimidation, or threat[,]" 18 U.S.C. Sec. 874, the Davis-Bacon Act more broadly imposes civil liability where an employee is not paid the prevailing wage "unconditionally ... and without subsequent deduction or rebate ... regardless of any contractual relationship which may be alleged to exist between the contractor or subcontractor and such laborers and mechanics...." 40 U.S.C. Sec. 276a(a). On its face, the Davis-Bacon Act does not limit its reach to the "forced" return of wages to an employer. Indeed, the Davis-Bacon Act specifically recognizes that workers on government projects might voluntarily return their wages to their employer through a contractual arrangement.
 
 
 20
 To support their position, Local 357 and the amicus curiae resort to legislative history. The legislative history of the two statutes does not advance their position. As the D.C. Circuit held in Building Trades, "the legislative history of the amendments adding this ['without subsequent reduction or rebate'] language to the Davis-Bacon Act suggests no such limitation, and it implies that the Act's coverage is broader than the Copeland Act's ban on the coerced return of wages." Building Trades, 40 F.3d at 1280 (emphasis added).
 
 
 21
 In 1934, Congress enacted the Copeland Act, 18 U.S.C. Sec. 874, which prescribes criminal penalties for forcing employees to "kickback" wages to their employer. The Copeland Act provides:Whoever, by force, intimidation, or threat of procuring dismissal from employment or by any other manner whatsoever induces any person employed in the construction, prosecution, completion or repair of any public building, public work, or building or work financed in whole or in part by loans or grants from the United States, to give up any part of the compensation to which he is entitled under his contract of employment, shall be fined ... or imprisoned ... or both.
 
 18 U.S.C. Sec. 874. The Copeland Act was
 
 22
 aimed at the suppression of the so-called 'kick-back' racket by which a contractor on a Government project pays his laborers wages at the rate the Government requires him to pay them, but thereafter forces them to give back to him a part of the wage they have received.
 
 
 23
 H.R.Rep. No. 1750, 73rd Cong., 2d Sess. 1 (1934).
 
 
 24
 The Davis-Bacon Act was originally enacted in 1931 as a "minimum wage law designed for the benefit of construction workers" which "protects ... employees from substandard earnings by fixing a floor under wages on Government projects." United States v. Binghamton Constr. Co., 347 U.S. 171, 177-178, 74 S.Ct. 438, 441-42, 98 L.Ed. 594 (1954). Originally passed without an enforcement mechanism, it soon became apparent that one was necessary. In 1935, Congress amended the Davis-Bacon Act to add a requirement that laborers and mechanics be paid "unconditionally ... and without subsequent deduction or rebate on any account, the full amounts accrued at the time of payment ... regardless of any contractual relationship which may be alleged to exist between the contractor or subcontractor and such laborers and mechanics...." 49 Stat. 1011-1013, c. 825 (Aug. 30, 1935) (codified at 40 U.S.C. Sec. 276a(a)).[4]
 
 
 25
 The Reports of the House, Senate, and Subcommittee do not support Local 357's interpretation that the 1935 amendment was directed solely to kickbacks. S.Rep. No. 1155, 74th Cong., 1st Sess. 2 (1935) ("Senate Report"); H.R.Rep. no. 1756, 74th Cong., 1st Sess. 2 (1935) ("House Report"); S.Rep. No. 332 Part 2, 74th Cong., 1st Sess. (1935) ("Subcommittee Report"). Rather, these documents reveal that Congress sought to address a broader array of practices--including but not limited to kickbacks--by which the "prevailing rate of wage principle has been flaunted." House & Senate Reports at 1. For example, the Subcommittee recommended providing remedies for laborers and mechanics aggrieved "by forced rebates or failure to pay the prevailing rate of wages...." Subcommittee Report at 7 (emphasis added). The House and Senate Reports summarized the amendment as placing upon contractors "[t]he burden of seeing to it that the illegal practices of exacting rebates or kickbacks is eliminated...." House & Senate Reports at 3 (emphasis added). Finally, the bill contained the provision regarding "contractual relationships" between workers and contractors in response to the subcommittee's finding that worker partnerships would enter into contracts for work "the net result of which was to pay the members of the partnership less than the prevailing rate of wage." House & Senate Reports at 3.
 
 
 26
 2. The Davis-Bacon Act Applies To Union Activity.
 
 
 27
 Local 357 maintains that neither the Davis-Bacon Act nor the Copeland Act applies to lawful union activity, such as the collection of dues. Local 357 asserts that the Davis-Bacon Act is restricted to regulating contractor activity and that there is no contractor involvement in its JTP.
 
 
 28
 Local 357's assertion assumes that its JTP activity is lawful. We conclude that the two percent gross wage assessment is a prohibited "deduction or rebate" within the meaning of the Davis-Bacon Act.
 
 
 29
 The avowal that there is no contractor involvement in Local 357's JTP scheme ignores the reality of the arrangement. In Local 357's JTP, workers pay two percent of their gross salary to the JTP, which then pays this amount, less minor administrative expenses, to targeted contractors. Although Local 357 may have created the program on its own initiative, contractors are certainly involved in the JTP; the contractors are the sole recipients of the JTP funds and are the JTP's raison d'etre. Furthermore, the deposition testimony of Local 357's business manager, Sam Darby, highlights the integral role that employers play in the arrangement: "The contractors and the market-recovery committee work very close [sic] together on this thing [the JTP]."
 
 
 30
 Local 357's two percent wage reduction on Davis-Bacon projects flaunts the express purposes of the Davis-Bacon Act, which is to "severely restrict the occasions when prevailing wages [on government projects] may be returned to contractors, and to prohibit the use of deductions from employees' wages to profit or benefit contractors...." Letter of Administrator at 5. Consistently with these purposes, administrative and judicial interpretations of the Act have consistently found union JTP activity to be within the ambit of the statute. In Building Trades the Administrator held that Local 595's JTP violated the Davis-Bacon Act and concluded that JTPs in general violate the Davis-Bacon Act. The Department of Labor's Wage Appeals Board similarly concluded "job targeting programs, generally, violate the public policy embodied in the Davis-Bacon Act." WAB Decision at 9.
 
 
 31
 Local 357 attempts to distinguish Building Trades from the case at bar on the ground that Local 595's JTP more directly involved contractors. Local 595's JTP contractors deducted a percentage of the employees' wages and paid the amounts to the Local's JTP. In Local 357's JTP, by contrast, union members pay the two percent assessment directly to the union without the employer making any deductions. This distinction is unavailing. Consistently with the manifest purposes of the Davis-Bacon Act, the Building Trades rulings properly looked to the fact that Local 595's JTP resulted in a reduction of employee's wages below the prevailing rate to the benefit of contractors. Building Trades, 40 F.3d at 1281 ("It is clear that these regulations evince an overarching concern that deductions from the employee's prevailing wage under the Davis-Bacon Act do not benefit the employer directly or indirectly."). In Local 357's JTP, as in Local 595's JTP, the local union serves as an intermediary that impermissibly effectuates the reduction of employee's wages for work performed on government projects to the benefit of contractors.
 
 
 32
 Local 357 maintains that United States v. Carbone, 327 U.S. 633, 66 S.Ct. 734, 90 L.Ed. 904 (1946), stands for the broad proposition that the Davis-Bacon Act does not apply to union activity. In that case, the Supreme Court upheld the dismissal of an indictment pursuant the Copeland Act against union officers and a union employee. We reject Local 357's contention and agree with the D.C. Circuit's holding that Carbone "sheds little light on the application of the Davis-Bacon Act to JTPs." Building Trades, 40 F.3d at 1280.
 
 
 33
 Finally, there is no tenable distinction between (1) direct deductions of employee wages on government projects which amounts are then transferred to a union's JTP and then to targeted contractors as in Local 595's JTP, and (2) union-required employee payment of a percentage of their wages earned on government projects to the union's JTP which then routes the amounts to targeted contractors. The former was the type of JTP at issue in Building Trades, and the latter is the type of JTP in this case. To distinguish between the two methods of JTP assessment would be to elevate unacceptably form over substance. In both scenarios, unions have devised a scheme to evade the Davis-Bacon Act. In both arrangements, employees working on federal projects and contributing to the JTP receive wages below the prevailing wage to the benefit of contractors. As in the direct deduction method, Local 357's subsidization of targeted projects will likely skew prevailing wages in the relevant locality. Whether JTP payments are deducted from employee wages or made directly to a union, they circumvent the language and purposes of the Davis-Bacon Act and its regulations, which are to restrict severely the occasions when prevailing wages may be returned to contractors and to prohibit the use of deductions from employee wages to profit or benefit contractors. Local 357's JTP permits contractors with cheap labor to underbid their competition, which is contrary to the Act's purposes.
 
 
 34
 Local 357's arguments to the contrary are unavailing. Local 357 does not deny that the Workers received less than the prevailing wage. Rather, Local 357 construes Sec. 276a(a) as only prohibiting deductions from the full amounts accrued at the time of payment. In other words, as long as the Workers are paid their full salary on payday, Local 357 contends, the statute is not violated. Local 357 asserts that the fact that the Workers may afterward use a portion of their paychecks to pay their JTP assessments does not bring those assessments within the ambit of the Davis-Bacon Act. Focusing on the time of payment ignores the plain language of the statute which prohibits subsequent deductions or rebates from the full amounts accrued at the time of payment. In addition, Local 357's interpretation of Sec. 276a(a) would also lead to the conclusion that kickbacks would not be prohibited by the Davis-Bacon Act because in the kickback scenario a worker is paid, but then returns a portion of the payment back to the contractor. Similarly, Local 357's contention that there exists no direct connection between the amounts paid to the JTP and the employees' wages ignores the undisputed fact that the money paid to the JTP constitutes two percent of the employees' gross wages.
 
 
 35
 Next, Local 357 contends that there is no Davis-Bacon Act problem with its JTP assessment in this case because there is no possible benefit to the contractor, Reeco. Local 357 asserts that because Reeco is the prime contractor to the Department of Energy for the Nevada Test Site on which Workers were employed, Reeco will never qualify for participation in the JTP of Local 357 and thus will never benefit from the sums Workers pay to the JTP.
 
 
 36
 There is no support in the language of the Act for the conclusion that paying government employees less than the prevailing wage must benefit the very employer from which the wage rebate is derived. In contrast, the Act clearly states that the prevailing wage must be paid "unconditionally" and without reduction in the form of a subsequent deduction or rebate. 40 U.S.C. Sec. 276a(a). We therefore disagree with the dissenting view voiced in Building Trades that the language of the Act "focuses narrowly on deductions taken for use by the very contractor or subcontractor who signs the paycheck." Building Trades, 40 F.3d at 1283. As the legislative history demonstrates, a purpose of the Act was to provide a minimum wage for construction workers in order to prevent contractors from underbidding local competition. To prohibit the return of wages to contractors other than the employer on the Davis-Bacon job is consistent with both the language and purpose of the Act.
 
 
 37
 Finally, there is no merit to Local 357's contention that the Workers are not "forced" to pay the wage assessments. Local 357 insists that because the JTP program was established and is funded by vote of the membership, the Workers are not coerced to pay the two percent amount. Local 357 overlooks the fact that, as travelers working within Local 357's jurisdiction, the Workers are not permitted to vote on Local 357 matters. Moreover, the Workers are required to pay the two percent amount; there is nothing voluntary about the payment. As this lawsuit amply demonstrates, if the Workers do not pay the wage assessment, they will be fined and possibly suspended or expelled from the union.[5]
 
 
 38
 Even if the Workers voluntarily paid the two percent gross wage assessments to Local 357's JTP, the JTP would still violate the Davis-Bacon Act. On its face, the statutory prohibition on paying less than the prevailing wage includes voluntary contracts between employers and employees. See Building Trades, 815 F.Supp. at 492. In enacting the Davis-Bacon Act, Congress fashioned a scheme that reflected the policy determination that an enforced minimum wage on government projects was in the best interest of employees and contractors. There is no indication that the protections the Act affords are waivable; nor should they be interpreted to be so.[6]
 
 
 39
 3. The Two Percent Assessment Does Not Qualify As "Membership Dues" Within the Meaning of 29 C.F.R. Sec. 3.5(i).
 
 
 40
 Local 357 and the amicus curiae repeatedly refer to the two percent amount as "dues." If the two percent were to constitute "regular ... membership dues," a deduction for that amount would be permissible under the Davis-Bacon Act's implementing regulations. 29 C.F.R. Sec. 3.5(i) et seq.
 
 
 41
 In 1964, the Secretary of Labor adopted regulations at 29 C.F.R. Part 3 under the Copeland Act "to aid in the enforcement of the minimum wage provisions of the Davis-Bacon Act and the various statutes dealing with federally assisted construction that contain similar minimum wage provisions...." 29 C.F.R. Sec. 3.1. These regulations allow certain deductions to be made from the wages of an employee. Section 3.5(i), for example, provides that deductions may be made without the approval of the Secretary of Labor "to pay regular union initiation fees and membership dues, not including fines or special assessments." Id. Sec. 3.5(i).
 
 
 42
 The terms "regular ... membership dues" and "special assessments" are neither defined in the Davis-Bacon Act nor in its implementing regulations. In Building Trades, the Administrator specifically rejected the contention, implicitly advanced to us, that deductions from an employee's wages to support a union's JTP constitute "membership dues" within the meaning of Sec. 3.5(i). The Administrator so held in light of a fundamental principle of the Davis-Bacon Act that wages paid to construction employees on public projects should not revert to contractors. The Wage Appeals Board agreed with this conclusion, as did the D.C. Circuit. WAB Decision at 7-9; Building Trades, 40 F.3d at 1280-82.
 
 
 43
 The Administrator's interpretation of its own regulations is entitled to significant deference. Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980). As the Supreme Court has reiterated, "provided an agency's interpretation of its own regulation does not violate the Constitution or a federal statute, it must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." Stinson v. United States, --- U.S. ----, ----, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993) (internal quotations and citations omitted). The Administrator's interpretation of Sec. 3.5(i) to preclude JTP deductions is not plainly erroneous in light of the purpose and language of the Davis-Bacon Act and its implementing regulations. Building Trades, 40 F.3d at 1281. The deductions permitted under 29 C.F.R. Secs. 3.5 and 3.6 evince "an overarching concern that deductions from the employee's prevailing wage under the Davis-Bacon Act do not benefit the employer directly or indirectly." Id. We follow the D.C. Circuit in concluding that Local 357's JTP assessments deductions are not membership dues.
 
 
 44
 Testimony from Local 357's business managers reveals that by the union's own definition, the two percent amount is not dues. The two percent amount is paid directly to Local 357's JTP. Local 357 maintains a separate checking and savings account for the JTP funds. Whereas Local 357's "dues," as defined by its business managers, are used to fund such expenses as union salaries, collective bargaining activities, rent, and utilities, none of the money that is collected for the JTP is used for these everyday union expenses.[7]
 
 
 45
 The D.C. Circuit also rejected union contentions that interpretations of the term "periodic dues," taken from the National Labor Relations Act context, are relevant in determining whether JTP assessments are "membership dues" under Davis-Bacon Act regulations. Building Trades, 40 F.3d at 1281-1282. We agree with the D.C. Circuit's analysis.
 
 
 46
 Interpretations of the phrase "periodic dues" in the National Labor Relations Act, 29 U.S.C. Sec. 158(a)(3), do not support the conclusion that the JTP payments are dues. The JTP assessments which Local 357 and the amicus curiae characterize as "membership dues" are not "uniformly required." 29 U.S.C. Sec. 158(a)(3). Only those IBEW workers within Local 357's jurisdiction working under an "inside" collective bargaining agreement are required to pay the two percent assessment in addition to their Working Dues. This is because Local 357 has a market recovery program in place only for the "inside" workers, the journeymen electricians. The "outside" workers, the linemen, are employed under a different collective bargaining agreement. Thus, even within Local 357, the two percent assessment is not "uniformly required."
 
 
 47
 We hold that the two percent gross wage assessment does not constitute "membership dues" within the meaning of 29 C.F.R. Sec. 3.5(i). The NLRA does not change this conclusion.
 
 
 48
 B. Back Assessments, the 20% Penalty, Attorney's Fees and Interest.
 
 
 49
 Because we conclude that Local 357's JTP violates the Davis-Bacon Act, Local 357 had no authority to collect the two percent gross wage assessments or to assess penalties or interest for failing to pay the assessments. Nor is Local 357 entitled to attorney's fees for pursuing the payment of amounts that it lacked authority to collect. Accordingly, we remand to the district court with instructions to vacate its award to Local 357 of $42,827.19 in assessments, fines, attorney's fees and interest.
 
 III.
 
 50
 Because we hold that the two percent gross wage assessment Local 357 imposed on the Workers violates the Davis-Bacon Act, we reverse the district court's grant of summary judgment in favor of Local 357 and remand the case to the district court with instructions to vacate its award of back assessments, fines, attorney's fees, and interest.
 
 
 51
 REVERSED AND REMANDED.
 
 
 
 [1]
 Article XI, Sec. 6(a) of Local 357's Bylaws provides:
 The monthly dues shall be:
 (a) "A" and "BA" Members
 All classifications--Basic Dues $1.70 plus * Working Dues: $2.80 in addition to the amount defined as follows:
 (NOTE) Working Dues shall be predicated on the number of hours in a given calendar month as follows:
 
 
 [1]
 Those employed 10 hours but less than forty (40) hours ....... an amount equal to one (1) hour straight time pay
 
 
 [2]
 Those employed forty (40) hours or more ....... an amount equal to two (2) hours straight pay
 
 
 *
 Members employed under an Inside Agreement in the jurisdiction of Local 357 shall pay an additional 2% of gross wages
 (emphasis added).
 
 
 [2]
 The Workers also brought a counterclaim against Local 357's business manager, Sam Darby, for intentional interference with business relations for notifying the Workers' home locals that the Workers had been found guilty of and fined for refusing to pay the two percent assessment. The dismissal of this counterclaim has not been appealed
 
 
 [3]
 The Administrator held that Local 595's wage assessment would not constitute a kickback. Letter of Administrator at 3. Although in their statement of the issues on appeal the Workers included the question whether the Local 357's JTP violates the Copeland Act, they did not present argument in their briefs that the JTP involves illegal kickbacks. We therefore do not address the question of whether the two percent assessment is a kickback within the meaning of the Copeland Act
 
 
 [4]
 As amended, the Davis-Bacon Act provides in relevant part:
 The advertised specifications for every contract in excess of $2,000 to which the United States or the District of Columbia is a party, for construction, alteration and/or repair ... of public buildings or public works of the United States ... and which requires or involves the employment of mechanics and/or laborers shall contain a provision stating the minimum wages to be paid ... which shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the city, town, village, or other civil subdivision of the State in which the work is to be performed ...; and every contract based upon these specifications shall contain a stipulation that the contractor or his contractor shall pay all mechanics and laborers employed directly upon the site of the work, unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account, the full amounts accrued at the time of payment, computed at wage rates not less than those stated in the advertised specifications, regardless of any contractual relationship which may be alleged to exist between the contractor or subcontractor and such laborers and mechanics....
 40 U.S.C. Sec. 276a(a).
 
 
 [5]
 In a related argument, Local 357 asserts that the Workers could still work on the Reeco project within its jurisdiction and not belong to the local. Local 357 offers no factual support for this assertion. If Reeco is party to a collective bargaining agreement with Local 357, it seems unlikely that Workers could work for Reeco under the same terms as Local 357 members, as Local 357 contends
 
 
 [6]
 Local 357 presented to us a decision of the Administrator of Department of Labor's Wage and Hour Division dated June 20, 1995 responding to a request for a ruling by the Building and Construction Trades Department. The latter requested a determination that Sec. 3.5(i) of the regulations under the Davis-Bacon Act does not prohibit the deduction of membership dues from a workers' wages in favor of a union that (1) maintains a general fund for the receipt of those dues and for the payment of authorized union expenditures as those obligations become due; and (2) operates a JTP for which no portion of the membership dues payment is earmarked or dedicated. The Administrator declined to find that the described JTP was permissible under the Davis-Bacon Act, reiterating its position that:
 [J]ob targeting payments violate the Davis-Bacon Act prohibition against subsequent deduction or rebate, 40 U.S.C. 276a, as well as the Department's regulations at 29 CFR Part 3, where the payments are made to contractors who currently work or in the recent past have worked on Davis-Bacon projects, and the payments are funded in whole or in party by deductions from wages of employees on Davis-Bacon projects. Such payments would be a violation even where they are made from general dues under the circumstances described in your letter.
 Letter of Administrator at 1-2. But the Administrator then stated that in light of the Department's scarce resources to enforce the Act, it "would not take exception" to a scenario in which "there are no payroll deductions for dues and employees pay their union dues directly to the unions" and "the unions may use the dues to fund a job-targeting program--without regard to whether a portion of the dues is earmarked for job targeting." Id. at 2. We do not find this "no action" position to be binding or relevant to the case at bar. We do, however, agree with the Administrator's conclusion that JTPs violate the Davis-Bacon Act.
 
 
 [7]
 Mr. Darby, who served as Local 357's business manager from November 1990, testified as follows in his deposition:
 Q. .... The dues that Local 357 charges of its members, what activities does that go to fund?
 A. It goes to the functions of the local union. That's what pays the salaries, it pays the--any kind of expenses incurred by the local union, negotiations, the lost-time expenses, everything that it takes to run the local union.
 And Arthur C. Wynn, Jr., Local 357's business manager who introduced Local 357's JTP in the first place, testified:
 Q. ... None of it [the JTP money] goes to paying rent or paying union salaries or utilities or anything like that?
 A. No.
 Q. Okay. None of it goes for collective bargaining purposes ... which would be negotiating contracts, administering contracts, settling disputes, those sorts of things?
 A. No.